Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. At the time of the alleged contraction of an occupational disease, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff.
3. Travelers Insurance Company was the carrier on the risk.
4. Plaintiff had been receiving disability benefits pursuant to a noncontributory plan which provided payment for 24 months.
In addition, the parties stipulated into evidence the following:
a) A packet of medical records and reports.
b) A job history.
* * * * * * * * *
The Full Commission adopts the findings of the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff, who is a fifty-three year old high school graduate, began working for defendant-employer in August 1981 as a production supervisor at the company's Greenville, South Carolina plant. The company manufactured plastic containers, including bottles for soft drinks. In 1983 he was promoted to production manager, and in February 1987 he was transferred to the Charlotte plant as plant manager. The Charlotte facility was not profitable when plaintiff arrived, but the management team was able with hard work and effort to turn it around within a couple of years thereafter.
2. In September 1989 plaintiff had a heart attack and was out of work for approximately two months before returning to work on a part time basis. He resumed a full time schedule in January 1990. When he returned to work, the plant had a new operations manager, James Hyde, and Darrell Page was the acting plant manager. Mr. Hyde decided to let Steve Young assume the role of plant manager in March 1990 in order to give him some experience in that role before he was promoted and sent to another plant. While Mr. Young was serving as plant manager in Charlotte, plaintiff was given special projects to do in the plant. He worked in that capacity until June 1991 when he was reassigned as plant manager after Mr. Young had been promoted.
3. In March, 1991 plaintiff's wife died after a six-month battle with cancer. He understandably experienced some stress associated with her illness and death but did not miss more than two weeks of work.
4. During plaintiff's term as plant manager beginning in 1991, Mr. Hyde was less than happy with his performance. Plaintiff was inconsistent in following up on matters Mr. Hyde brought to his attention, he had some problems in dealing with the employees and Mr. Hyde did not believe that he was showing initiative. Others in the plant had also been disappointed in his performance as plant manager before his heart attack and had felt that they had had to shoulder more than their share of the work load. To make matters worse, the working relationship between plaintiff and Mr. Hyde began to deteriorate and Mr. Hyde found himself increasingly involved in details that the plant manager should have handled. Consequently, by June, 1992 plaintiff was asked to step down as plant manager. When he was informed of the decision, he asked for Mr. Hyde's supervisor, Mr. Maffeo, to come to Charlotte and review the matter. Mr. Maffeo did come to Charlotte but was supportive of Mr. Hyde, so plaintiff was quite frustrated with the meeting, particularly when Mr. Hyde let him know that he was expected thereafter to follow instructions without going to the corporate office.
5. Mr. Hyde was not unreasonable in his dealings with plaintiff. He felt that he was being more than fair to plaintiff since plaintiff was not being terminated and his salary was being continued at its former level. It was clear to the employees, however, that plaintiff had been demoted. He was given the title of total quality management coordinator and he did special projects in the plant until approximately January, 1993 when the A-shift supervisor went out on medical leave. He was then transferred to that position and worked in that capacity until January 7, 1994 when he went out on medical leave.
6. Plaintiff has claimed that he developed an occupational disease due to stress in his employment with defendant-employer. In 1993, Dr. Clark was his treating physician and was following him for a number of health problems including diabetes and high blood pressure, as well as following up on his heart condition. In December, 1993 plaintiff reported to the doctor that he was under a lot of stress, that he had been demoted and that he believed that his employer was trying to get him to retire. He then complained of crying spells and problems sleeping, so Dr. Clark prescribed medication for him, took him out of work and referred him to Dr. Long, a psychologist, who began seeing him on February 9, 1994. At that first session, plaintiff described multiple stressors in his life including two heart attacks, the deaths of his wife, his brother, his mother and his father-in-law, the demotion at work and conflict with Mr. Hyde. He reported symptoms of feeling stressed, anxious, irritable, tense, and depressed. Dr. Long's initial impression was that plaintiff had an adjustment disorder with depression and anxiety and he recommended therapy.
7. Dr. Long and Dr. Clark continued to treat plaintiff for psychological problems up until the date of hearing. His condition was ultimately diagnosed as major depression. Despite the psychological treatment and medication plaintiff, remained very angry and obsessed with James Hyde and unable to resolve his feelings about the operations manager. Apparently Dr. Long made no effort to provide behavior modification therapy to address his obsession with Mr. Hyde and to provide him with better coping skills.
8. On October 11, 1995 plaintiff was evaluated by Dr. Aronoff, a psychiatrist. Dr. Aronoff was of the opinion that plaintiff had a cognitive distortion, or a faulty belief that most of his problems were related to his employment when, in fact, there were many other stressors and problems which had also contributed to his emotional difficulties, including long-standing personality traits. Dr. Aronoff recommended cognitive behavioral psychotherapy which would target the faulty beliefs. He did not find plaintiff's psychological condition to be disabling except to the extent that plaintiff might have to work with Mr. Hyde. When plaintiff was examined, he was able to concentrate and respond to questions without evidence of impairment of his cognitive functions.
9. Plaintiff experienced a number of stressors prior to the onset of his severe depression in December, 1993. He had had significant health problems which caused him to worry, but he especially tended to be overly fearful of having another heart attack despite the assurance of his doctor that his heart condition appeared stable. Deaths in his family have been a source of stress for him. His employment was also a source of stress. There was stress associated with working in a supervisory capacity in a production environment. However, plaintiff indicated that he had been able to cope with that stress over the years and had enjoyed his work. It was the demotion that really bothered him. He felt humiliated by the loss of status, position and prestige. Since he derived much of his self-esteem from his work, it offended his sense of pride to be doing what he considered to be menial jobs, even though he had previously been satisfied with those jobs.
10. In fact, plaintiff was treated reasonably well by his employer despite a mediocre job performance as plant manager. Because of his years with the company, he was allowed to continue his employment, his salary and his benefits, although he lost the company car and the expectation of future raises. However, his perception of the situation was distorted and he responded with anger and irritability and by chronically ruminating about every instance where he had felt slighted by Mr. Hyde or other employees.
11. Plaintiff was not placed at an increased risk of developing depression as a result of his employment with defendant-employer as compared to the general public not so employed. The actual stress imposed by his various positions was not shown to have been out of the ordinary and depression was not shown to be characteristic of the employment involved. Rather, it was plaintiff's peculiar reaction to circumstances within his employment which contributed to his subsequent psychological condition.
12. Plaintiff has not proven that he developed an occupational disease which was due to causes and conditions characteristic of and peculiar to his employment and which was not an ordinary disease of life to which the general public was equally exposed.
* * * * * * * * *
Based upon the foregoing stipulations and findings of facts, the Full Commission makes the following
CONCLUSIONS OF LAW
1. Plaintiff has not proven that he developed an occupational disease which was due to causes and conditions characteristic of and peculiar to his employment and which was not an ordinary disease of life to which the general public was equally exposed. G.S. § 97-53(13); Bookerv. Duke Medical Center, 297 N.C. 458 (1979).
2. Plaintiff is not entitled to benefits under the Workers' Compensation Act for his psychological condition. G.S. § 97-2 etseq.
* * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Plaintiff's claim for workers' compensation benefits is hereby DENIED.
2. Each side shall pay its own costs.
 S/ ____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ____________ THOMAS J. BOLCH COMMISSIONER
S/ ____________ LAURA K. MAVRETIC COMMISSIONER
BSB:md